UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON

**Eastern District of Kentucky**
**FILED**

MAY 1 1 2005
AT LONDON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

CIVIL ACTION NO. 04-282-GWU

STEPHEN LINDSAY,                                    PLAINTIFF,

VS.                          **MEMORANDUM OPINION**

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,                    DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative

denial of his applications for Disability Insurance Benefits (DIB) and Supplemental

Security Income (SSI). The appeal is currently before the Court on cross-motions

for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial

review of Social Security disability benefit cases:

1.   Is the claimant currently engaged in substantial gainful activity?
     If yes, the claimant is not disabled. If no, proceed to Step 2.
     See 20 CFR 404.1520(b), 416.920(b).

2.   Does the claimant have any medically determinable physical
     or mental impairment(s)? If yes, proceed to Step 3. If no, the
     claimant is not disabled. See 20 CFR 404.1508, 416.908.

3.   Does the claimant have any severe impairment(s)--i.e., any
     impairment(s) significantly limiting the claimant's physical or
     mental ability to do basic work activities? If yes, proceed to

1

Lindsay

Step 4. If no, the claimant is not disabled. <u>See</u> 20 CFR 404.1520(c), 404.1521, 416.920(c), 461.921.

4.   Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. <u>See</u> 20 CFR 404.920(d), 416.920(d).

5.   Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6. <u>See</u> 20 CFR 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6.   Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work?  If yes, the claimant was not disabled. If no, proceed to Step 7. <u>See</u> 20 CFR 404.1520(e), 416.920(e).

7.   Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy?  If yes, the claimant is not disabled.   <u>See</u> 20 CFR 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

<u>Garner v. Heckler</u>, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply.   Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. <u>Jones v. Secretary of Health and Human Services</u>, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial

2

evidence" is "more than a mere scintilla[; i]t means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. . ." Wright v. Massanari, 321 F.3d 611, 614 (6th Cir. 2003) (quoting Kirk v. Secretary of Health and Human Services, 667 F.2d 524, 535 (6th Cir. 1981). It is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these

3

symptoms. 20 CFR Section 404.1529 (1991). However, in evaluating a claimant's

allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an
> underlying medical condition. If there is, we then examine: (1)
> whether objective medical evidence confirms the severity of the alleged
> pain arising from the condition; or (2) whether the objectively
> established medical condition is of such a severity that it can
> reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir.

1986).

Another issue concerns the effect of proof that an impairment may be

remedied by treatment. The Sixth Circuit has held that such an impairment will not

serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health

and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same

result does not follow if the record is devoid of any evidence that the plaintiff would

have regained his residual capacity for work if he had followed his doctor's

instructions to do something or if the instructions were merely recommendations.

Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106,

1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before

it, despite the plaintiff's claims that he was unable to afford extensive medical work-

ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir.

1987). Further, a failure to seek treatment for a period of time may be a factor to be

4

Lindsay

considered against the plaintiff, Hale v. Secretary of Health and Human Services,
816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford
or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242
(6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work.
Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to
make out a prima facie case by proving that he or she is unable to return to work.
Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th
Cir. 1983). However, both 20 CFR 416.965(a) and 20 CFR 404.1563 provide that
an individual with only off-and-on work experience is considered to have had no work
experience at all. Thus, jobs held for only a brief tenure may not form the basis of
the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly
prove that there is work in the national economy which the plaintiff can perform, then
an award of benefits may, under certain circumstances, be had. E.g., Faucher v.
Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the
ways for the Commissioner to perform this task is through the use of the medical
vocational guidelines which appear at 20 CFR Part 404, Subpart P, Appendix 2 and

5

Lindsay

analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 CFR 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 CFR 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 CFR Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term

6

Lindsay

"framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Stephen Lindsay, was found by an Administrative Law Judge (ALJ) to have "severe" impairments consisting of a paracentral disc extrusion at C5-C6 and a right knee injury. (Tr. 20). Nevertheless, based in part on the testimony of a vocational expert (VE), the ALJ determined that Mr. Lindsay retained the residual functional capacity to perform a significant number of jobs existing in the economy and, therefore, was not entitled to benefits. (Tr. 22-4). The Appeals Council declined to review, and this action followed.

At the administrative hearing, the ALJ had asked the VE whether a person of the plaintiff's age, education, and work experience could perform any jobs if he were capable of light level exertion, and also had the following non-exertional impairments. (Tr. 22). He: (1) would need the option of sitting or standing at 30

7

Lindsay

minute intervals; (2) could occasionally bend; (3) could do no stooping and have no

exposure to vibration; (4) could not push or pull above 10 pounds frequently and 20

pounds occasionally with the upper extremities; and (5) could not use pedal foot

controls with the right leg. (Tr. 64). The VE responded that there were jobs that

such a person could perform, and proceeded to give the numbers in which they

existed in the state and national economies. (Tr. 65). If a restriction of no repetitive

reaching, grasping, or handling with the non-dominant left upper extremity were

added to the above factors, the VE testified that the same jobs would be available,

reduced by 10 percent. (Id.).

On appeal, this Court must determine if the administrative decision is

supported by substantial evidence.

Mr. Lindsay alleged disability beginning January 29, 2001 due to problems

with neck pain which radiated down his left arm and caused it to go numb, and right

knee pain (despite arthroscopic surgery), which made it difficult for him to walk and

sometimes caused him to fall. (Tr. 40 --45, 50, 112).

Medical evidence in the transcript includes a May, 2001 referral from the

plaintiff's family physician to an orthopedic surgeon, Dr. Charles Catron, who

performed arthroscopic surgery on Mr. Lindsay's right knee on September 20, 2001.

(Tr. 152-3,160-1). The diagnosis was right knee pain with patellofemoral syndrome.

(Tr. 160). Following the surgery, Dr. Catron referred his patient for physical therapy

8

Lindsay

and prescribed a knee brace and, by January, Mr. Lindsay reported that he had reached a plateau with physical therapy. (Tr. 165, 162). He was walking without assistance, although he was still using the knee brace, and still having "occasional" pain. (Tr. 162). Dr. Catron's examination showed no effusion of the knee, a full range of motion, and no instability. (Id.). He recommended that the patient convert to a home physical therapy program, continue taking Vioxx, and return only as needed. (Id.).

A state agency reviewing physician, Dr. Gary Higgason, reported on April 10, 2002, that Dr. Catron had opined on February 17th that Mr. Lindsay should do no lifting or carrying greater than 20 pounds and limit his stooping through March 2, 2002 and afterwards would have no restrictions. (Tr. 238). Based on a March 23, 2002 consultative examination by Dr. Stephen Lamb, however, at which Dr. Lamb had noted the plaintiff walked favoring the left leg and had difficulty moving around the examination room, and could not perform toe or heel walking or stoop more than 35 percent of the way down (Tr. 178-80), Dr. Higgason opined that it would be reasonable to find that Mr. Lindsay had some restrictions temporarily, although they would be expected to resolve to no restrictions with further rehabilitation. (Tr. 180). Dr. Lamb himself had opined that the plaintiff would have a severe restriction in his tolerance for stooping, and a moderate restriction for standing and moving about,

9

along with a mild restriction for bending, but not for sitting, reaching, lifting, carrying, handling objects, or traveling. (Tr. 180).

Dr. Higgason apparently did not have office notes from the plaintiff's family physician, Dr. Bernard Moses, available for review, but notes from Dr. Moses dated between December, 1999 and April, 2002 show primarily that Dr. Moses prescribed medications such as Lortab and Valium. (Tr. 185-205). Very little in the way of physical findings can be discerned, although he did diagnose "arthritis." (Tr. 186).

In the second half of 2002, Mr. Lindsay was evaluated for complaints of right leg pain "on and off," associated with lower back pain and numbness in the calf and foot. (Tr. 249). This was specifically described by Dr. Catron as a "new problem." (Id.). Mr. Lindsay stated to Dr. Catron that he would sometimes drag his right foot due to the numbness. (Id.). Dr. Catron's examination showed slightly reduced strength of the right anterior tibia and slightly reduced right ankle reflexes, along with a subjective decreased sensation of the right foot. (Id.). His right knee had no effusion and a full range of motion. X-rays showed only minimal narrowing of the L5-S1 joint. (Id.). Dr. Catron recommended conservative treatment, but eventually referred his patient to another orthopedist, Dr. Dennis Menke. (Tr. 247).

Dr. Menke examined the plaintiff in December, 2002, and noted on examination that the plaintiff had an unusual gait because he would not put his left heel down, claiming that he had heel pain. (Tr. 245). There was tenderness to

10

palpation of the lower lumbar spine, but Mr. Lindsay could bend forward at the waist until his fingertips reached to almost his mid-tibia. (Id.). The only focal deficit on strength testing was a very mild weakness in the "right EHL;" reflexes were symmetrical at the ankles and knees. (Id.). X-rays appeared normal, an MRI was recommended. (Tr. 246). The MRI of the lumbar spine, however, "showed no abnormality at all." (Tr. 244, 312). Dr. Menke diagnosed "atypical" right leg pain, and opined that it was not the result of any back problem. (Tr. 244).

Subsequent notes from Dr. Moses showed that after Mr. Catron complained of neck stiffness and left arm numbness in May, 2003, he was evaluated extensively for possible cardiovascular problems as well as cervical problems. (Tr. 292). A carotid duplex sonogram, while showing 38 percent stenosis in the bulb region of the right side of the heart, was not considered by the examining physician to show anything "hemodynamically significant." (Tr. 253). Mr. Lindsay reported to Dr. Moses on May 19th that he felt better with the use of the medication Plavix and aspirin. (Tr. 293). An MRI of the cervical spine had been obtained, however, and it showed a "tiny" left paracentral disc protrusion at the C-5-C6 level causing "mild" left-sided foraminal narrowing. (Tr. 254). Dr. Moses referred his patient to a neurologist, Dr. Gregory Anderson. (Tr. 293). There are no notes from Dr. Anderson in the transcript, but Dr. Moses indicated in August that the patient

11

Lindsay

reported Dr. Anderson did not help "much," and sent his patient to another neurosurgeon, Dr. William Brooks. (Tr. 298).

Dr. Brooks examined Mr. Lindsay on August 28, 2003, noting his complaints of pain in the neck radiating to the left arm "in an ill-defined, nondermatomal distribution" associated with headache. (Tr. 277). Dr. Brooks indicated that Dr. Anderson's "complete evaluation" had shown no neurological dysfunction. (Id.). Dr. Brooks reviewed the diagnostic studies and agreed that surgery was not an option, as there was no evidence of nerve root or spinal cord entrapment. (Id.). He returned the patient to the care of Dr. Moses with a suggestion of "pain management." (Tr. 278). No functional restrictions were given.

In his decision, the ALJ declined to find the presence of any restrictions related to the left arm problem because there were no medical findings to demonstrate any impairment. (Tr. 21-2). His residual functional capacity findings are consistent with those given by Dr. Lamb and with the temporary restrictions which Dr. Higgason mentioned had been given by Dr. Catron, and give the plaintiff the benefit of the doubt in limitations on the use of foot controls.

On appeal, the plaintiff challenges the ALJ's omission of any left arm restrictions because of the finding of the "tiny" cervical disc herniation on the MRI. Counsel maintains that such a finding could reasonably result in the symptoms described by the plaintiff, and that the ALJ should have ordered a consultative

12

Lindsay

examination to evaluate this problem further. However, the examination by Dr. Brooks showed no objective neurological findings as a result of the cervical herniation, and his report also indicates that the neurological evaluation by Dr. Anderson was also negative. Under the circumstances, the ALJ was not required to investigate the specific issue in greater depth. Moreover, as the Commissioner points out in her brief, the ALJ did give an alternative hypothetical question to the VE which included limitations on the use of the left arm, and the VE's testimony still showed a significant number of jobs which the plaintiff could perform.

The plaintiff also submitted new evidence to the Appeals Council, primarily consisting of a functional capacity assessment from Dr. Moses dated January 14, 2004, approximately six weeks after the ALJ issued his decision. (Tr. 329-33). Dr. Moses gives the plaintiff's diagnoses as right knee strain, arthritis, anxiety, and cervical strain. (Tr. 329). He felt that the plaintiff's anxiety would prevent him from performing even low stress jobs (Tr. 330), and he would be limited to less than full-time work because of restrictions on sitting and standing/walking. (Tr. 331). He was also said to be incapable of lifting more than 10 pounds in a competitive work situation. (Tr. 332). Counsel for the plaintiff requests a remand under Sentence Six of 42 U.S.C. Section 405(g), asserting that the new evidence is both "material" and that "good cause" existed for failing to submit it earlier. The materiality of the new evidence is doubtful, however, given the lack of objective physical findings by the

13

Lindsay

recent examining specialists to whom the patient had been referred by Dr. Moses, and the lack of objective findings in Dr. Moses's own office notes. While Dr. Moses prescribed Valium, he described the patient's mood as normal, when any notation regarding mental condition was made at all. (Tr. 185-95, 279-83, 296). Even the opinion of a treating physician is not entitled to complete deference in the absence of objective signs, symptoms, and laboratory findings. Harris v. Heckler, 756 F.2d 431, 435 (6th Cir. 1985). It is questionable whether the extreme restrictions given by Dr. Moses should have been given controlling weight by the ALJ under the circumstances. Although Mr. Lindsay's condition may have deteriorated subsequently, evidence of a change for the worse in a claimant's condition has been held to be not "material" even when it was only one month after the ALJ's decision. Wyatt v. Secretary of Health and Human Services, 974 F.2d 680, 685 (6th Cir. 1992).

The decision will be affirmed.

This the ___//___ day of May, 2005.

G. WIX UNTHANK
SENIOR JUDGE

14